UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDOLPH CHAMBERS** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-7061** |
| **WILCO INDUSTRIAL SERVICES, L.L.C.** | **SECTION I** |

**ORDER AND REASONS**

Defendant, Wilco Industrial Services, L.L.C. ("Wilco"), has filed a motion for summary judgment. Plaintiff, Randolph Chambers ("Chambers"), has filed an opposition. For the following reasons, the motion[1] is **GRANTED.**

**BACKGROUND**

Plaintiff filed his complaint on October 28, 2009 alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331 and admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).[2] Plaintiff alleges that on December 17, 2008, plaintiff was employed by defendant as a deckhand and that plaintiff was "contributing to and aiding a dredge barge" owned and operated by defendant.[3] Plaintiff alleges that "[w]hile on board the dredge barge performing dredge work in [Little Bayou Black],[4] Plaintiff sustained serious injuries when he was struck in the head by the backhoe or bucket of the dredge that was dredging the canal."[5] Plaintiff alleges that he suffered "severe injuries to his back, neck, head, shoulders, legs and other parts of his body" as a result of

---

[1] R. Doc. No. 24.

[2] R. Doc. No. 1, p. 1.

[3] *Id.* at p. 2.

[4] Although plaintiff's complaint states that he was injured on Bayou Black, *id.*, plaintiff testified at his deposition and states in his opposition that he was injured while working on Little Bayou Black. R. Doc. Nos. 27-2, p. 1; 27-5, pp. 13-15.

[5] R. Doc. No. 1, p. 2.

1

defendant's negligence.[6] Plaintiff asserts claims pursuant to the Jones Act and general maritime law.

**DISCUSSION**

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[6]*Id.*

2

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B. Admiralty Jurisdiction

"Federal admiralty jurisdiction exists giving a court jurisdiction over a dispute if the tort occurs on navigable waters and the tort bears a significant relationship to traditional maritime activity." *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376-77 (5th Cir. 1988) (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)). To establish admiralty jurisdiction under 28 U.S.C. § 1333(1) over a tort claim, a plaintiff must show both a maritime location and a maritime connection. *Scarborough v. Clemco Industries*, 391 F.3d 660, 663 (5th Cir. 2004) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995); *Sisson v. Ruby*, 497 U.S. 358, 360-66, 110 S.Ct. 2892, 2895-98, 111 L.Ed.2d 292 (1990)).

### i. Maritime Location

The maritime location test requires that a plaintiff show that his injury occurred on navigable waters or, if suffered on land, that it was caused by a vessel on navigable waters. *Scarborough*, 391 F.3d at 663 (citing *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048; *Hufnagel v. Omega Service Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999)). The Supreme Court first articulated the test for navigable waters in *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871):

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are

> susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water.

*Id.* at 563.

The Supreme Court subsequently held that the above stated test applies to all bodies of water, not just rivers, natural as well as artificial. *Sanders*, 861 F.2d at 1377 (citing *Ex Parte Boyer*, 109 U.S. 629, 632, 3 S.Ct. 434, 435, 27 L.Ed. 1056 (1884)). As the Fifth Circuit stated, "In short, then, navigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial." *Sanders*, 861 F.2d at 1377. For admiralty jurisdiction to exist, a body of water must be *currently* navigable. *See Alford v. Appalachian Power Co.*, 951 F.2d 30, 32 (4th Cir. 1991) ("[N]avigable water for purposes of admiralty jurisdiction [is defined] as a body of water which, *in its present configuration*, constitutes a highway of commerce, alone or together with another body of water, between the states or with foreign countries over which commerce *in its current mode* is capable of being conducted.") (emphasis added); *Dunaway v. United States of America*, 2000 WL 1741870 at *3 (E.D. La. Nov. 20, 2000) ("[A]dmiralty jurisdiction turns on current navigability.").

   ii. Maritime Connection

The maritime connection test has two requirements. First, "the activity at issue must be of a sort with potential to disrupt maritime commerce" and second, "the general character of the

activity giving rise to the incident [must bear] a substantial relationship to particularly maritime activity." *Scarborough*, 391 F.3d at 664 (citing *Grubart*, 513 U.S. at 534).

## *C. The Jones Act*

The Jones Act provides a cause of action for "a seaman injured in the course of employment." 46 U.S.C. § 30104 (formerly 46 U.S.C. App. § 688). Therefore, plaintiff must show that he qualifies as a "seaman." The United States Supreme Court initially interpreted the Jones Act's use of the term seaman to require that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991) (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959)).[7] The Court subsequently required that "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995). By adding a requirement of substantial connection, the Court intended to distinguish "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*[8]

---

[7]The Court clarified that an employee need not "aid in navigation or contribute to the transportation of the vessel" to qualify as a seaman. *Wilander*, 498 U.S. at 355.

[8]The *Chandris* Court further explained that:
> '[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon.' The duration of the worker's connection to a vessel and the nature of the worker's activities taken together determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time.

*Id.* at 370 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)).

Qualifying as a seaman under the Jones Act hinges on an employee's status in relation to a vessel rather than on the nature or location of the injury.[9] *Chandris*, 515 U.S. at 359-63. Therefore, "maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship." *Id.* at 360.

"Once it is established that a worker is a seaman, 'the Jones Act permits recovery even if he sues for injuries received while off ship and engaged in temporary work for his employer unrelated to service of the ship." *Smith v. Odom Offshore Surveys, Inc*., 791 F.2d 411, 415 (5th Cir. 1986) (quoting *Higginbotham v. Mobile Oil Corp*., 545 F.2d 422, 432 (5th Cir.1977), reversed on other grounds, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978)). "Neither the situs of the employee's work, nor the place of injury, is determinative in a Jones Act case. A seaman does not lose his status because he is temporarily assigned by his employer to duties off his vessel." *Id.* (citing *Guidry v. South Louisiana Contractors, Inc*., 614 F.2d 447, 453 (5th Cir. 1980)); *see also Chandris*, 515 U.S. at 360. However:

> [T]he employee must be a seaman at the time his claim arises; the fact that he was once a seaman and that either he or his employer intend some day for him again to become one do not suffice to tint with blue water status all the events that happened in between, however remote in time and place from a vessel past or a vessel future.

*Odom*, 791 F.2d at 599.

## DISCUSSION

---

[9]The Fifth Circuit has stated as a general rule of thumb that in order to qualify as a Jones Act seaman, an employee should demonstrate that at least 30 percent of his work is spent in service of a vessel in navigation. *Roberts v. Cardinal Servs., Inc*., 266 F.3d 368, 375 (5th Cir. 2001). The Supreme Court approved of this benchmark, but clarified it is "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Chandris*, 515 U.S. at 371, 115 S. Ct. at 2191 (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

### A. Admiralty Jurisdiction

Defendant contends that plaintiff cannot show a maritime location because Little Black Bayou is not currently capable of navigation in interstate travel or commerce.[10] According to the April 9, 2010 affidavit of Wesley Pietre,[11] the dredge manager at Wilco, Little Bayou Black is located in Terrebonne Parish, Louisiana and "begins in the vicinity of the intersection of [Louisiana Highway] 311 and Manchester Drive and continues southwest for approximately 4.4 miles where it empties into Bayou Black."[12] The Pietre affidavit states that Little Bayou Black is "approximately 40 to 50 feet wide" and has an approximate depth of "five to eight feet."[13] Pietre attests that "six fixed bridges . . . cross [Little Bayou Black] with an approximate of four feet of clearance under the bridges."[14]

The Pietre affidavit further states that Little Bayou Black "is interrupted by culverts that carry its flow beneath state highways in two separate locations."[15] Pietre testified at his

---

[10]R. Doc. No. 24-3, p. 3.

[11]Plaintiff objects to the first Pietre affidavit signed on April 9, 2010, R. Doc. No. 24-4, on the ground that Pietre did not state that "he is competent to testify or that he has personal knowledge of the facts regarding Plaintiff's accident or the flexifloat described in paragraph 11." R. Doc. No. 27-6, p. 1. Defendants have submitted a subsequent affidavit by Pietre, dated May 3, 2010, attesting to his personal knowledge of the facts contained in the April 9, 2010 affidavit and stating that he is competent to testify with respect to such facts. *See* R. Doc. No. 30-1. The Court finds that in light of the May 3, 2010 affidavit, Pietre's April 9, 2010 affidavit meets the requirements of Rule 56(e) of the Federal Rules of Civil Procedure that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).
     Plaintiff also objects to Pietre's statement that "no commercial activity takes place on Little Bayou Black" as conclusory. Because the Court does not rely on such statement, it need not consider whether it is conclusory. Plaintiff also objects to certain pictures attached to Pietre's April 9, 2010 affidavit as not relevant because defendant has not presented any evidence with respect to where plaintiff's injury occurred in relation to the bridges. *See* R. Doc. No. 24-4, pp. 3-5. The Court agrees that such photographs are not relevant for this reason and it does not consider them in its when deciding this motion for summary judgment.

[12]R. Doc. No. 24-4, p. 1.

[13]*Id.*

[14]*Id.* at p. 2.

[15]*Id.* at p. 2.

deposition that vessels cannot travel through the culverts.[16] Pietre described the culverts as "concrete structures, maybe eight feet tall, eight feet wide, that are submersed and they are for carrying water. There is virtually – there is no air space at times. When the water levels drop really low, there's a couple of inches of air space from the top of the water to the top of the culverts."[17]

At his deposition, Pietre testified that he was not familiar with Ouiski Bayou, a body of water that is upstream from Little Bayou Black.[18] Pietre testified that he did not know if a vessel could travel northwest along Little Bayou Black to Ouiski Bayou and then eventually reach the Gulf of Mexico or the Intracoastal Canal.[19]

On July 19, 2010, defendants submitted a third affidavit by Pietre.[20] Pietre attests that "[b]ased on my personal observation and investigation, it is not possible for a vessel to reach the Gulf of Mexico by traveling in either direction along [Little Bayou Black] from the location of [plaintiff's] injuries as alleged in this matter."[21] Pietre attested that "Ouiski Bayou is not capable of navigation in interstate travel or commerce as it terminates northwest of the location where Mr. Chambers was allegedly injured at a point within the territorial borders of Louisiana."[22]

The Pietre affidavit states that his knowledge of the Ouiski Bayou was based on his "review of aerial photographs and maps of Ouiski Bayou which show its termination northwest

---

[16] R. Doc. No. 40-1, p. 4.

[17] *Id.*

[18] *Id.* at p. 6.

[19] *Id.*

[20] *See* R. Doc. No. 48, pp. 6-9.

[21] *Id.* at pp. 6- 7.

[22] *Id.*

8

of its intersection with Little Black Bayou."²³ Pietre states that the aerial photographs and maps he reviewed were "obtained from Google Earth where they are publically available. These images depict the boundaries of the waterway at issue in this case and the images are typically relied on by the public to ascertain such information."²⁴

Plaintiff has provided an affidavit by Darren Donovan ("Donovan"), who states that he is "an investigator retained by Plaintiff to investigate Little Bayou Black and Bayou Black."²⁵ Donovan's affidavit states that, based on Donovan's personal observation and investigation:

> Little Bayou Black is located in Houma, Louisiana. This navigable waterway runs adjacent to Highway 311/Little Bayou Black Drive. Little Bayou [sic] intersects with Bayou Black within the City of Houma. Bayou Black intersects with the Houma Canal within the City of Houma. The Houma Canal intersects with the Intracoastal Waterway directly South of the City of Houma. Followed due South, the Intracoastal Waterway accesses Terrebonne Bay and the Gulf of Mexico.

Attached to Donovan's affidavit are images that "depict the boundaries of the waterways at issue" in this case which Donovan states he obtained from www.Yahoo.com.²⁶

Plaintiff has not submitted any affidavits or deposition testimony that contradict Pietre's description of the bridges and culverts that separate Little Bayou Black from Bayou Black²⁷ or Pietre's attestation that it is not possible to reach interstate waters from Ouiski Bayou. Although Donovan's affidavit describes Little Bayou Black as "navigable," he has not alleged facts in support of that conclusory statement. Donovan's description of Little Bayou Black as navigable

---

²³*Id.*

²⁴R. Doc. No. 48, p. 7.

²⁵R. Doc. No. 27-3, p. 1.

²⁶*Id.* at p. 2.

²⁷Even if, as plaintiff argues, the multiple bridges on Little Bayou Black would not prevent navigation downstream to Black Bayou, plaintiff has not even argued, much less produced, any admissible summary judgment evidence that a vessel could navigate Little Bayou Black through the culverts beneath the two state highways.

is not sufficient to defeat a motion for summary judgment.[28] Plaintiff has not provided evidence that Little Bayou Black is capable, in fact, of navigation in interstate travel or commerce.

Instead, plaintiff argues that: 1) the presence of artificial obstructions does not render Little Bayou Black legally non-navigable; 2) because Little Bayou Black is capable of being used for commercial activity it is within this Court's admiralty jurisdiction; and 3) Little Bayou Black is navigable because it unites with other navigable waters. The Court will address each argument in turn.

Citing *Economy Light & Power Co. v. U.S.*, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921), plaintiff argues that the existence of artificial obstructions does not prevent Little Bayou Black from being regarded as legally navigable.[29] Plaintiff's argument confuses the admiralty and non-admiralty jurisprudence regarding navigable waters. As the court explained in *Hardwick v. Pro-Line Boats, Inc.*, 895 F. Supp. 145 (S.D. Tex. 1995):

> Plaintiffs essentially argue that if a body of water is navigable in its original state, then a manmade dam cannot change that status and deprive a federal court of admiralty jurisdiction over it. This, however, is the meaning of "navigability" within the context of Congress' regulatory powers and not in the context of a federal court's jurisdiction over admiralty matters. *See Economy Light & Power Co. v. United States*, 256 U.S. 113, 118, 41 S.Ct. 409, 411, 65 L.Ed. 847 (1921) (holding that the "navigability" of the Desplaines River allowed Congress to order a dam to be built). Congress' Commerce power, being broader than the Court's admiralty jurisdiction, extends over waters that are not presently navigable. [*Kaiser Aetna v. United States,* 444 U.S. 164, 172, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979).]

*Id*. at 147-48; *see also Dunaway,* 2000 WL 1741870 at *3 ("Navigability under the commerce clause focuses on historic navigability, while admiralty jurisdiction turns on current

---

[28]"Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

[29]R. Doc. No. 27-2, p. 5.

navigability."). For admiralty jurisdiction to exist, Little Bayou Black must have been navigable at the time of plaintiff's injury.

Plaintiff further argues that Little Bayou Black "is capable of being used for commercial activity in its natural state."[30] Such argument disregards the fact that, to be navigable, a body of water must be "capable, in fact, of *navigation* in *interstate* travel or commerce . . ." *Sanders*, 861 F.2d at 1377 (emphasis added). The fact that Little Bayou Black may be used for intrastate commercial activities is not relevant. Plaintiff has not presented any evidence that Little Bayou Black is part of a continuous highway between states over which commerce can be conducted. *See Sanders*, 861 F.2d at 1378.

Plaintiff also argues that Little Bayou Black is navigable because it unites with other navigable waterways.[31] The fact that Little Bayou Black connects to other navigable waterways is not sufficient. As stated above, Little Bayou Black, itself, must also be navigable.

Plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to whether Little Bayou Black is capable, in fact, of navigation in interstate travel or commerce. As plaintiff cannot demonstrate a maritime location, the Court lacks admiralty jurisdiction over plaintiff's claims.

***B. The Jones Act***

In response to defendant's motion for summary judgment, plaintiff argues that even if admiralty jurisdiction is not present, the Court still has federal question jurisdiction over plaintiff's Jones Act claim. Defendant contends that plaintiff was not a Jones Act seaman at the time of his injury. In order to recover under the Jones Act, plaintiff must have been a Jones Act seaman at the time his claim arose. *See Guidry,* 614 F.2d at 453.

---

[30]*Id.* at p. 4.

[31]*Id.*

Plaintiff's work on Little Bayou Black does not qualify him as a Jones Act seaman because Little Bayou Black is not a navigable body of water. *See In re Destiny Drilling (U.S.A.) v. Haire*, 184 F.3d 816 (5th Cir. 1999); *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1253 (3d Cir. 1994); *Stanfield v. Shellmaker*, 869 F.2d 521, 524 (9th Cir. 1989); *Ingram v. Assoc. Pipeline Contractors*, 241 F. Supp. 4, 5-6 (E.D. La. 1965).

Plaintiff argues that he attained seaman status prior to his work on Little Bayou Black and, because of such prior work, he was a Jones Act seaman at the time of his injury. As stated by the Fifth Circuit, "Neither the situs of the employee's work, nor the place of injury, is determinative in a Jones Act case. A seaman does not lose his status because he is *temporarily* assigned by his employer to duties off his vessel." *Odom*, 791 F.2d at 415 (emphasis added). However, a worker who is permanently assigned to a job on land or on non-navigable waters is not a seaman within the meaning of the Jones Act. *See Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 599-600 (5th Cir. 1986); *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1258 (3d Cir. 1994); *Stanfield v. Shellmaker*, 869 F.2d 521, 525 (9th Cir. 1989); *Young v. Pool Co.*, 2000 WL 122246 at *3 (E.D. La. Jan. 31, 2000); *Beard v. Mentz*, 1990 WL 43925 at *1 (E.D. La. Apr. 5, 1990). For purposes of the Jones Act, a "permanent" assignment means "'for an indefinite period' – not temporary." *Smith*, 841 F.2d at 600.

Even assuming that, prior to his work on Little Bayou Black, plaintiff was a seaman within the meaning of the Jones Act, defendant has presented evidence that he was permanently assigned to a job on non-navigable waters at the time of his injury. In an affidavit, Pietre states that plaintiff was permanently assigned to the job on Little Bayou Black on December 8, 2008. Pietre attests that "[b]ut for Randolph Chamber's [sic] alleged injury on December 17, 2008, he would have been permanently assigned to the Little Bayou Black job until it ended on April 20,

2009."[32] Plaintiff has not provided any evidence that his assignment to Little Bayou Black was not permanent or indefinite.[33] Because he was not a Jones Act seaman at the time of his injury, plaintiff cannot recover under the Jones Act. *See Young*, 2000 WL 122246 at *3; *Beard*, 1990 WL 43925 at *1.

## *CONCLUSION*

Accordingly, and for the reasons stated above,

**IT IS ORDERED** that defendant's motion[34] for summary judgment is **GRANTED** and plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, August 2, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[32] R. Doc. No. 54-1, p. 2.

[33] Defendant also argues that plaintiff was previously assigned to a job on Bayou Sauvage from August 7, 2008 to December 5, 2008 and that such job also took place on non-navigable waters. Pietre states in an affidavit that the site of the Bayou Sauvage job is within the New Orleans Hurricane Protection System and, as such, is "landlocked." R. Doc. No. 54-1. Plaintiff argues that the work performed on Bayou Sauvage was "indisputably on navigable waters." R. Doc. No. 53, p. 5. Having found that plaintiff was not a Jones Act seaman at the time of his injury, the Court need not discuss whether plaintiff was a Jones Act seaman at the time of his work on Bayou Sauvage.

[34] R. Doc. No. 24.